# Roudebush, Appellant, v. Meadville.

*Municipalities—Cities of the third class—Appropriation of property for park purposes—Joint resolution—Agreement with owner as to damages—Previous appropriation.*

1. Under the Act of May 23, 1889, P. L. 277, providing for the government of cities of the third class, as amended by the Acts of June 26, 1895, P. L. 349; May 11, 1901, P. L. 187; April 25, 1903, P. L. 316, and May 6, 1909, P. L. 459, councils of cities of the third class may, in condemning land for park purposes, proceed either by formal ordinance or by simple joint resolution.

2. While under the Act of June 8, 1895, P. L. 188, a bond tendered by the city to pay damages, for property taken for park purposes, should not be submitted to the Court of Common Pleas for approval until after there has been a bona fide effort to reach a satisfactory adjustment with the owner of the property, a contention that there has been no such bona fide effort will be overruled on appeal, where the court below has found that the mayor of the city offered the claimant a specified price for his lot, which offer was declined, and that the claimant admitted that he had at all times refused to accept said amount or "any other sum," and "that the city could not agree with the owner upon his compensation or damages," it not appearing that the sum tendered was unreasonable or out of proportion to the value of the land appropriated.

3. It is not necessary for a city of the third class to actually appropriate money to pay for lands which it is proposed to take for park purposes, prior to instituting proceedings for the taking of the land. Under the statutes the property owner is sufficiently pro-

tected, and it cannot be successfully argued that the failure to previously appropriate renders the condemnation proceedings invalid.

Argued April 28, 1913.    Appeal, No. 306, Jan. T., 1912, by plaintiff, from order of C. P. Crawford Co., Feb. T., 1912, No. 124, approving defendant's bond, in proceedings to condemn land, in case of M. L. Roudebush v. City of Meadville.   Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Affirmed.

Rule to show cause why an indemnity bond should not be approved.   Before PRATHER, P. J.

The facts appear by the opinion of the Supreme Court.

The court made the rule absolute and approved the bond.   Plaintiff appealed.

*Error assigned*, among others, was the order of the court.

*Wesley B. Best*, with him *John O. McClintock*, for appellant.—The condemnation of private land for public park purposes should be by ordinance, or by a resolution of councils passed with all the requirements and formalities of an ordinance: Howard v. Olyphant Boro., 181 Pa. 191; Seventh Street, Lebanon, 5 Pa. D. R. 591.

No bona fide effort was made by the city to agree with plaintiff upon the value and the price to be paid for the property it desired to appropriate.   At the time of the passage of the joint resolution of councils an appropriation should have been made by councils to pay the sum of fifteen hundred dollars in case plaintiff agreed to accept the same: Com. v. Foster, 215 Pa. 177; Brown v. Corry, 175 Pa. 528; McKinnon v. Mertz, 225 Pa. 85; Miller v. Philadelphia, 231 Pa. 196; Deysher v. Reading, 18 Pa. C. C. R. 611.

*Albert L. Thomas*, of *Thomas & Thomas*, with him *B.*

*B. Pickett,* for appellee.—The joint resolution was sufficient in law to condemn plaintiff's land: Lesley v. Kite, 192 Pa. 268; Central Valley R. R. Co. v. Pittston, 13 Pa. D. R. 675; Meadville v. Roudebush, 20 Pa. D. R. 602.

The evidence shows that there was an attempt on the part of the city to contract for the land.

A specific appropriation of a sum of money sufficient to meet and pay the damages suffered by the owner of land is not a necessary prerequisite to the validity of condemnation proceedings: Kensington Comm'rs. v. Wood, 10 Pa. 93; Com. v. R. R. Co., 58 Pa. 26; Pittsburgh v. Scott, 1 Pa. 309; Sedgeley Ave. Case, 88 Pa. 509; Com. v. Allegheny County Comm'rs., 37 Pa. 237.

OPINION BY MR. JUSTICE MOSCHZISKER, May 22, 1913:

This is an appeal from an order approving a bond tendered by the defendant city in a proceeding to appropriate a piece of land belonging to the plaintiff. The assignments of error raise three principal questions which we shall dispose of in order.

The appellant contends that a city of the third class has no right to appropriate the property of a citizen for park purposes "by a joint resolution of councils" passed in the ordinary way, but that such action must be by an ordinance or by what is tantamount thereto—a resolution passed with all the formalities of an ordinance. Section 7 of Article 6, of the Act of May 23, 1889, P. L. 277, for the government of cities of the third class, provides that "every legislative act of councils shall be by resolution or ordinance." Section 1 of the Act of June 26, 1895, P. L. 349, provides: "That it shall be lawful for and the right is hereby conferred upon the cities of this Commonwealth to......appropriate private property for the purposes of making public parks...... whenever the councils thereof shall by ordinance or joint resolution, determine thereon." This latter act was amended in (May 11) 1901 (P. L. 187), in (April 25) 1903 (P. L. 316), and in (May 6) 1909 (P. L. 459);

all of these amendments repeat the right to appropriate by "joint resolution," and none of them makes any changes which affect the question before us. At the time these various acts of assembly were passed the distinction between an ordinance and a joint resolution was well-defined and understood; therefore, from the language employed, we must conclude that the legislature intended to give to cities of the third class in condemning land for park purposes the alternative right to act either by a formal ordinance or by a simple joint resolution. Hence, the learned court below committed no error in holding action by joint resolution to be sufficient within the requirements of the law.

The appellant's next contention is that there was no bona fide effort made by the municipality to affect a satisfactory adjustment with the owner before the bond was tendered. Section 2 of the Act of June 8, 1895, P. L. 188, provides that if the compensation "cannot be agreed upon" it shall be lawful for a city to tender its bonds, and if the claimant refuses to accept the security thus tendered the bond shall be submitted to the Court of Common Pleas for approval. The court below finds that the mayor of the city informed the claimant that he was instructed to offer him $1500 for his lot, that this offer was declined, and that the claimant admitted that he had "at all times refused to accept $1500 or any other sum"; and upon these findings the court states the conclusion of fact "that the city could not agree with the owner upon his compensation or damages." We cannot say that the court below erred in this conclusion; and since it does not appear that the sum tendered was unreasonable or out of proportion to the value of the land appropriated, the fact that the ordinance directing the mayor to emparl with the claimant limited the amount he was authorized to offer to $1500, would not invalidate or affect the bona fides of the negotiations.

Finally, the appellant contends that the absence of a prior appropriation of money to pay for the lands taken

rendered the condemnation proceedings, including the offer, a nullity. Section 1 of the Act of June 8, 1895, P. L. 188, provides, "in all cases where any municipality ......shall hereafter be authorized or empowered by law to......appropriate private property for the purpose of making......public parks,......whenever the councils thereof shall by ordinance or joint resolution determine thereon, the compensation and damages arising......shall be considered, ascertained, determined, awarded and paid in the manner hereafter provided"; then, in Section 2, it provides that after the bond is approved, "recovery may be had thereon for the amount of damages ascertained or finally determined"; this is followed by other sections providing adequate means for ascertaining the damages; and at the end, Section 7 provides that when the damages are determined upon they shall be "assessed against and paid by the municipality." Section 2 of the Act of July 15, 1897, P. L. 273, amends the second section of this Act of 1895 and provides that after confirmation of the damages awarded "judgment shall be entered," and if not paid within thirty days "said judgment shall be collected by due legal process as other judgments are collected from said city." It has been long held that it is not essential that the damages shall be actually determined or paid before the appropriation of the land; no more is it necessary that the money shall be set apart. The legislation upon the subject gives a complete system for ascertaining and securing payment of the damages; this affords ample protection to all concerned, and the provision in Section 2, of Article VIII, of the Act of 1889, to the effect that "no money shall be paid out of the city treasury unless the same shall have been previously appropriated by councils," and other like provisions, have no application. Section 4 of the Act of May 13, 1856, P. L. 567, consolidating the City of Philadelphia, contained a provision that orders for the payment of road damages "shall not be countersigned and paid until an appro-

priation therefor be made by councils," and Section 5 of the Act of April 21, 1858, P. L. 385, provided that "no debt or contract hereafter incurred or made shall be binding on the City of Philadelphia unless authorized by law or ordinance and an appropriation sufficient to pay the same be previously made by councils"; yet, in Sedgeley Avenue Case, 88 Pa. 509, 516, where land was taken by the City of Philadelphia, in 1875, without a previous appropriation, we affirmed an order upon the city treasurer to pay the damages; and in overruling the contention that "the land owner must wait until an appropriation has been made by councils," we there said, "nor is there any reason why the citizen whose property has been taken should be compelled to knock at the doors of councils and ask for an appropriation,......his property having been taken, and his right to compensation established......, he is in a position to demand satisfaction, and it does not rest with the city councils to deny it or to delay it at their pleasure," adding, "it may well be questioned in view of the constitutional provision :...... ('that compensation shall be paid or secured before the property of a citizen shall be taken for public use') whether the legislature may lawfully restrain the property owner whose land has been taken......from proceeding at once to obtain satisfaction." But aside from that thought, the provisions of the various acts of assembly forbidding payments from the funds of municipalities in the absence of prior appropriations by their city councils, are inconsistent with the legislation regulating the ascertainment and payment of damages for land taken in the exercise of the right of eminent domain, and it is clear that such provisions were never intended to apply to debts arising in that way.

The assignments of error are all overruled and the order of the court below is affirmed at the cost of the appellant.